## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| KEEFE JOHN, TODD KNUTH, and NORM WALKER, *on behalf of themselves and all others similarly situated*, | |
| Plaintiffs, | Case No. 23-cv-01253 |
| v. | Hon. Judge Lynn Adelman |
| DELTA DEFENSE, LLC and UNITED STATES CONCEALED CARRY ASSOCIATION, INC., | |
| Defendants. | |

### PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS

David S. Almeida
Britany A. Kabakov
**ALMEIDA LAW GROUP LLC**
849 W. Webster Avenue
Chicago, Illinois 60614
(708) 529-5418
david@almeidalawgroup.com
britany@almeidalawgroup.com

Timothy M. Hansen
Michael C. Lueder
**HANSEN REYNOLDS LLC**
301 N. Broadway, Suite 400
Milwaukee, Wisconsin 53202
(414) 455-7676
thansen@hansenreynolds.com
mlueder@hansenreynolds.com

*Counsel for Plaintiffs & the Settlement Class*

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 1

BACKGROUND ................................................................................................. 3

SUMMARY OF THE SETTLEMENT ............................................................. 3

    A.      Settlement Class .............................................................................. 3

    B.      Settlement Class Member Benefits ................................................ 3

    C.      Attorneys' Fees and Costs & Plaintiffs' Service Awards ............ 4

LEGAL STANDARD ......................................................................................... 5

DISCUSSION ...................................................................................................... 6

    A.      Class Counsel's Requested Fee is Reasonable and Should be Approved. ............ 6

         1.      The Percentage of the Fund Method is Appropriate for Calculating Fees. 7

         2.      Class Counsel's Requested Fee Award Represents a Reasonable Percentage of the Net Settlement Fund. ........................................ 8

         3.      Class Counsel's Requested Fee Award is Commensurate with the Fees Awarded in Similar Tracking Settlements. ................................. 9

         4.      The Risks Involved in this Action Justify the Requested Fee Award....... 10

         5.      Class Counsel's Requested Fee is Well Within the Range of Typical Contingency Fee Arrangements in this Circuit. ....................... 12

         6.      The Quality of Class Counsel's Work and Effort Invested Support the Requested Fee. ........................................................ 13

    B.      The Court Should Also Award Reasonable Reimbursement for Expenses. ......... 14

    C.      The Service Award to the Class Representative Should Be Approved. ............... 14

CONCLUSION .................................................................................................. 16

i

## <u>TABLE OF AUTHORITIES</u>

PAGE(S)

Cases

*Americana Art China Co., Inc. v. Foxfire Printing & Packaging, Inc.*,
    743 F.3d 243 (7th Cir. 2014) ................................................................... 7

*Benoskie v. Kerry Foods, Inc.*,
    2020 WL 5769488 (E.D. Wis. Sept. 28, 2020) ....................................... 12

*Birchmeier v. Caribbean Cruise Line, Inc.*,
    896 F.3d 792 (7th Cir. 2018) ................................................................... 9

*Boeing Co. v. Van Gemert*,
    444 U.S. 472 (1980) ................................................................................ 8

*Braun v. Philadelphia Inquirer, LLC*,
    2025 WL 1314089 (E.D. Pa. May 6, 2025) ........................................... 10

*Chambers v. Together Credit Union*,
    2021 WL 1948452 (S.D. Ill. May 14, 2021) ......................................... 15

*Cook v. Niedert*,
    142 F.3d 1004 (7th Cir. 1998) ........................................................ 7, 15

*Daluge v. Cont'l Cas. Co.*,
    2018 WL 6040091 (W.D. Wis. Oct. 25, 2018) ..................................... 15

*Florin v. Nationsbank of Ga., N.A.*,
    34 F.3d 560 (7th Cir. 1994) ..................................................................... 7

*Great Neck Cap. Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers, L.L.P.*,
    212 F.R.D. 400 (E.D. Wis. 2002) ........................................................... 7

*Hobon v. Pizza Hut of S. Wisconsin, Inc.*,
    2019 WL 13217369 (W.D. Wis. Dec. 13, 2019) ................................... 15

*In re Advoc. Aurora Health Pixel Litig.*,
    740 F. Supp. 3d 736 (E.D. Wis. 2024) .................................................... 8

*In re Cont'l Ill. Sec. Litig.*,
    962 F.2d 566 (7th Cir. 1992) ................................................................... 7

i

*In re Forefront Data Breach Litig.*,
    2023 WL 6215366 (E.D. Wis. Mar. 22, 2023) ........................................................ 9

*In re Lawnmower Engine Horsepower Mktg. & Sales Pracs. Litig.*,
    733 F. Supp. 2d 997 (E.D. Wis. 2010) ............................................................... 14

*In re Novant Health, Inc.*,
    2024 WL 3028443 (M.D.N.C. June 17, 2024) .................................................. 10

*In re Sears, Roebuck & Co. Front-Loading Washer Prods. Liab. Litig.*,
    867 F.3d 791 (7th Cir. 2017) ........................................................................... 9

*In re Sw. Airlines Voucher Litig.*,
    799 F.3d 701 (7th Cir. 2015) ........................................................................... 6

*In re Synthroid Mktg. Litig.*,
    264 F.3d 712 (7th Cir. 2001) ....................................................... 6, 12, 14, 15

*In re TikTok, Inc., Consumer Priv. Litig.*,
    617 F. Supp. 3d 904 (N.D. Ill. 2022) ................................................. 10, 11, 12, 16

*Jewell v. HSN, Inc.*,
    2020 WL 4904427 (W.D. Wis. Aug. 19, 2020) ........................................... 14

*Kirchoff v. Flynn*,
    786 F.2d (7th Cir. 1986) ......................................................................... 11, 12

*Pearson v. NBTY, Inc.*,
    772 F.3d 778 (7th Cir. 2014) ................................................................... 8, 9

*Redman v. RadioShack Corp.*,
    768 F.3d 622 (7th Cir. 2014) ................................................................... 6, 8

*Silverman v. Motorola Sols., Inc.*,
    739 F.3d 956 (7th Cir. 2013) ........................................................................ 11

*Sutton v. Bernard*,
    504 F.3d 688 (7th Cir. 2007) ................................................................... 11, 13

*T.K. Through Leshore v. Bytedance Tech. Co.*,
    2022 WL 888943 (N.D. Ill. Mar. 25, 2022) ................................................. 8

*Taubenfeld v. Aon Corp.*,
    415 F.3d 597 (7th Cir. 2005) ................................................................... 9, 12

ii

*Williams v. Rohm & Haas Pension Plan*,

    658 F.3d 629 (7th Cir. 2011) ..................................................................................................... 7

Rules

Fed. R. Civ. P. 23 ................................................................................................................... 1, 5

Further to Federal Rules of Civil Procedure 23(h) and 54(d)(2), Plaintiffs Keefe John, Todd Knuth, and Norm Walker, on behalf of themselves and all others similarly situated, through undersigned counsel, respectfully submit this Memorandum of Law in Support of Motion for Attorneys' Fees, Costs, and Service Awards.

## INTRODUCTION

On November 17, 2025, this Court preliminarily approved the proposed class action settlement between Plaintiffs and Defendants Delta Defense, LLC and United States Concealed Carry Association, Inc. ("Defendants," and together with Plaintiffs, the "Parties"). *See* Dkt. No. 61.[1] The Settlement is an excellent result for Plaintiffs and the approximately 295,727 Settlement Class Members as each Class Member who submits a timely and valid claim will receive a pro rata share of the Net Settlement Fund (the remainder of the $1,450,000.00 non-reversionary common fund after the deduction of all Court-approved costs and expenses).

This result is the direct product of Class Counsel's skill, diligence, and willingness to assume significant litigation risk over more than two and a half years. Throughout the pendency of the case, Defendants have vigorously disputed liability, the applicability of the Video Privacy Protection Act ("VPPA"), and continue to contest the merits of Plaintiffs' claims. Against that backdrop, securing a substantial and certain monetary recovery now—rather than risking years of uncertain and protracted litigation—represents an outstanding outcome for the Settlement Class.

Class Counsel's efforts include, *inter alia*, investigating Defendants' alleged use of tracking technologies on their Website, such as the Meta Pixel and Google Analytics; interviewing and vetting numerous potential clients and potential class representatives; drafting a detailed

---

[1] Unless otherwise indicated, capitalized terms refer to and have the same meaning as those set forth in the Settlement Agreement ("Settlement Agreement" or "SA"). *See* Dkt. No. 59-1.

complaint addressing complex and evolving technological issues; completing formal discovery, including participating in numerous meet-and-confers and reviewing produced documents; and engaging in extensive settlement negotiations. Although the Parties participated in a full-day mediation before Hon. Mary Anne Mason (ret.) of JAMS in November 2024, no settlement was reached at that time. Over the following four months, the Parties had a second remote mediation session, which was productive but did not result in settlement and continued settlement-related negotiations and discovery until signing a term sheet in March 2025.

All of this work—from the initial investigation to drafting and filing the complaint to discovery to settling the case—was done on a purely contingent basis. Class Counsel received no compensation and no assurance of compensation throughout the litigation, which involved a nascent and legally complex area of law. In addition, Class Counsel advanced all litigation costs and expenses for the benefit of the Settlement Class.

In recognition of the substantial benefits conferred on the Settlement Class, Class Counsel respectfully requests this Honorable Court to award attorneys' fees in the amount of $446,333.33, which represents one third of the non-reversionary common fund ($1,450,000.00) minus Costs of Settlement administration (approximately $105,000)[2] and the requested Service Awards for each representative Plaintiff (totaling $6,000). Class Counsel also respectfully request reimbursement of $10,070.55 in litigation expenses, which were reasonably and necessarily incurred in prosecuting this action in furtherance of Plaintiffs' claims.[3]

---

[2] The Settlement Administrator will provide a further estimate of its costs in a declaration in support of final approval.

[3] Plaintiffs will separately move for final approval of the Settlement, which will be filed and include a proposed order regarding this Motion, prior to the Final Approval Hearing scheduled for March 16, 2026.

## BACKGROUND

In the interest of efficiency, Plaintiffs respectfully refer the Court to the detailed case summary and procedural history set forth in the Unopposed Motion for Preliminary Approval of Class Action Settlement, filed on November 7, 2025. *See* Dkt. No. 58. On November 17, 2025, this Court granted preliminary approval. *See* Dkt. No. 61.

## SUMMARY OF THE SETTLEMENT

The proposed Settlement provides a straightforward claims process by which Settlement Class Members may obtain an award from the Settlement or exclude themselves or object.

### A.      Settlement Class

The Settlement provides for monetary benefits for a nationwide Settlement Class defined as: "[a]ll persons in the United States who had an account (free or paid) with a Defendant and visited a page on a Defendant's website housing a video behind a paywall or subscription wall between September 21, 2020 to June 2, 2025. SA, ¶ 1.29. The Settlement Class consists of approximately 295,727 individuals. *See* Declaration of Britany A. Kabakov in Support of Plaintiffs' Motion for Attorneys' Fees, Costs, and Service Awards ("Fee Decl."), ¶ 19.

Excluded from the Settlement Class are the following individuals and/or entities: (i) Defendants and their parents, subsidiaries, officers and directors, and any entity in which Defendants have a controlling interest; (ii) all persons who submit a timely and valid request for exclusion from the Settlement Class; and (iii) the Judge assigned to this Action as well as their immediate family and staff. SA, ¶ 1.29.

### B.      Settlement Class Member Benefits

The Settlement provides Class Members with timely and tangible benefits targeted at remediating the specific harms they allegedly suffered using Defendants' Website as detailed in

the Amended Complaint. The monetary benefits of the Settlement are available to all Settlement Class Members through the $1,450,000.00 Settlement Fund to be funded by Defendants. SA ¶ 1.32. The Settlement Fund will be used to pay Court-approved costs and expenses associated with the Settlement, including (i) Settlement administration costs; (ii) attorneys' fees and expenses approved by the Court; and (iii) any Service Award approved by the Court. SA, ¶¶ 1.32, 3.2.1.

As will be detailed further in Plaintiffs' forthcoming motion for final approval, the Settlement has been received exceptionally well by Class Members. *See* Fee Decl., ¶ 44. Although the claims period remains open until March 2, 2026, as of February 9, 2026, the claims rate was approximately 5.13%. *Id.* And, to date, not a single one of those approximately 295,727 Settlement Class Members have objected to the proposed Settlement and only 32 have requested exclusion.[4] *Id.*

## C.   Attorneys' Fees and Costs & Plaintiffs' Service Awards

The Settlement Agreement permits for a reasonable Service Award to be sought in the amount of $2,000.00 for the three Class Representatives. SA, ¶ 2.1.3. The Service Award is meant to compensate Plaintiffs for their efforts in the Action and commitment on behalf of the Settlement Class. Plaintiffs' efforts include, among other things, maintaining regular contact with Class Counsel; participating in interviews; providing relevant documents; assisting with the investigation of the Action; remaining available for consultation throughout settlement

---

[4] Notably, no portion of the Settlement Fund will revert to Defendants. Any residual funds shall be distributed to *Cy Pres* Recipient, Electronic Privacy Information Center, or any other charitable organization approved by the Court. SA, ¶ 1.9. Because the balance of the Settlement Fund will be "swept out" in direct payments to Settlement Class Members making valid claims, it is anticipated that any *cy pres* award will be nominal and will only consist of funds associated with uncashed checks or non-redeemed electronic payments. SA, ¶¶ 3.5-3.8.

4

negotiations; and reviewing pertinent pleadings and the Settlement Agreement. *See* Fee Decl. ¶¶ 23-24.

Only after reaching agreement as to all material terms of the Settlement, Class Counsel negotiated their fees and costs separate and apart from the benefit to Class Members. *Id.* ¶ 48. The Settlement permits Settlement Class Counsel to seek an award for attorneys' fees, costs, and expenses up to one third of the Settlement Fund, totaling $483,333.00. SA, ¶ 2.1.4.

Class Counsels' fees were *not* guaranteed—the retainer agreement Class Counsel had with Plaintiffs did not provide for fees apart from those earned on a contingent basis—and, in the case of class settlement, as approved by the Court. *See* Fee Decl. ¶ 27. The purely contingent basis upon which Class Counsel undertook the case meant that Class Counsel assumed significant risk. *Id.* ¶ 28. Class Counsel spent time on this Action that could have otherwise been spent on other, fee-generating matters, and shouldered the risk of expending substantial costs and time without any monetary gain in the case of adverse judgment. *Id.* ¶¶ 31-33.

Given the efficiency with which Class Counsel litigated the case as well as their knowledge and experience in litigating similar tracking technology cases, the litigation costs and expenses incurred in this case are relatively low. Specifically, Plaintiffs' current expenses are $10,070.55, which include, among other things, filing fees, service costs, costs for necessary legal research, consulting expert costs, and mediation costs. *Id.* ¶¶ 36-38. These costs are reasonable and were necessary for the successful resolution of the Action.

## LEGAL STANDARD

Rule 23 provides that "[i]n a certified class action, the court may award reasonable attorney's fees...that are authorized by law or by the parties' agreement." FED.R.CIV.P. 23(h). In the Seventh Circuit, courts determine class action attorneys' fees by "[d]o[ing] their best to award

5

counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001) ("*Synthroid I*") (collecting cases). "At the time" is at the start of the case: the Court must "estimate the terms of the contract that private plaintiffs would have negotiated with their lawyers, had bargaining occurred at the outset of the case (that is, when the risk of loss still existed)." *Id.*

As part of this inquiry, the Court "must assess the value of the settlement to the class and the reasonableness of the agreed-upon attorneys' fees for class counsel," the central consideration being what class counsel achieved for class members. *Redman v. RadioShack Corp.*, 768 F.3d 622, 629 (7th Cir. 2014). In common fund cases, such as this one, class counsel "who recovers a common fund for the benefit of a class is entitled to a reasonable portion of the fund that is *made available* to the class[.]" *In re Sw. Airlines Voucher Litig.*, 799 F.3d 701, 708 (7th Cir. 2015).

## DISCUSSION

Plaintiffs respectfully request that the Court approve attorneys' fees in the amount of $446,333.33, reimbursement of litigation expenses totaling $10,070.55, and Service Awards of $2,000 for each Class Representative. As explained below, the requested fee award is consistent with the prevailing market rate for similar legal services in this jurisdiction and fairly reflects the result achieved in this Action. Similarly, the requested Service Awards are comparable to those approved in other data privacy cases and are warranted here.

### A.  Class Counsel's Requested Fee is Reasonable and Should be Approved.

Class Counsel litigated this Action on a pure contingency basis, advancing all litigation expenses without any guarantee of recovery or payment. Despite the uncertainty inherent in this nascent and rapidly evolving area of law under the VPPA, Class Counsel secured an excellent

6

result for the Class, under which each Settlement Class Member who submits a valid claim will receive a significant cash payment. For their work and results, Class Counsel seek the standard market rate for successful class actions, namely one-third of the Net Settlement Fund.

### 1.  The Percentage of the Fund Method is Appropriate for Calculating Fees.

The Seventh Circuit affords district courts discretion to determine the "market rate" for attorneys' fees based on either a lodestar or percent-of-benefit method. *See, e.g.*, *Americana Art China Co., Inc. v. Foxfire Printing & Packaging, Inc.*, 743 F.3d 243, 247 (7th Cir. 2014) ("[T]he choice of methods is discretionary . . . in our circuit, it is legally correct for a district court to choose either."); *Williams v. Rohm & Haas Pension Plan*, 658 F.3d 629, 636 (7th Cir. 2011) (similar); *Cook v. Niedert*, 142 F.3d 1004, 1013 (7th Cir. 1998) ("[W]e have never ordered the district judge to ensure that the lodestar result mimics that of the percentage approach.").

In consumer class actions, the Seventh Circuit has repeatedly recognized that the preferred method for calculating attorneys' fees is a percentage of the benefit conferred on the class: "there are advantages to utilizing the percentage method in common fund cases because of its relative simplicity of administration." *Florin v. Nationsbank of Ga., N.A.*, 34 F.3d 560, 566 (7th Cir. 1994); *see also Great Neck Cap. Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers, L.L.P.*, 212 F.R.D. 400, 411 (E.D. Wis. 2002) ("The Seventh Circuit recognizes that there are advantages to utilizing the percentage of fund method in common fund cases including its relative objectivity and the fact that it is easily administered."). Courts have further explained that market-based contingency fee percentages promote efficiency and avoid the need to "hassle over every item or category of hours and expense and what multiple to fix and so forth." *In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 573 (7th Cir. 1992).

7

Consistent with this framework, courts assessing the reasonableness of a fee request in a common-fund settlement typically compare the requested award to the total value of the benefit conferred on the class. *See, e.g.*, *In re Advoc. Aurora Health Pixel Litig.*, 740 F. Supp. 3d 736, 750 (E.D. Wis. 2024) (granting fees in pixel tracking case). The Supreme Court has recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see also T.K. Through Leshore v. Bytedance Tech. Co.*, 2022 WL 888943, at *24 (N.D. Ill. Mar. 25, 2022) (same). Because the Settlement here creates a common fund for the benefit of the Class, application of the percentage-of-the-benefit method is appropriate.

   **2. <u>Class Counsel's Requested Fee Award Represents a Reasonable Percentage of the Net Settlement Fund.</u>**

Class Counsel's knowledge, experience, and contingent fee work have resulted in significant benefits for the Class. Now, for its efforts, Class Counsel seek fees of $446,333.33, one third of the Net Settlement Fund, and $10,070.55 in litigation costs.[5]

District courts in the Seventh Circuit utilize a slight variant on the widely accepted percentage of the fund approach; here, district courts consider the ratio of "(1) the fee to (2) the fee plus what the class members received." *Redman*, 768 F.3d at 630 (omitting administrative costs and incentive awards from analysis). The "presumption" is generally that "attorneys' fees awarded to class counsel should not exceed a third or at most a half of the total amount of money going to class members and their counsel." *Pearson v. NBTY, Inc.*, 772 F.3d 778, 782 (7th Cir. 2014). "[A] district court should compare attorney fees to what is actually recovered by the class and presume

---

[5] The total attorneys' fees and expenses requested by Plaintiffs—$456,403.88—represent approximately 31.48% of the gross Settlement Fund.

8

that fees that exceed the recovery to the class are presumptively unreasonable." *In re Sears, Roebuck & Co. Front-Loading Washer Prods. Liab. Litig.*, 867 F.3d 791, 792 (7th Cir. 2017) (citing *Pearson*, 772 F.3d at 782).

Here, the requested fees are well within the guidelines set forth in *Pearson*. Considering Seventh Circuit precedent that provides that the costs incurred for notice and administration costs and service awards should not be considered for purposes of determining the appropriate percentage of attorneys' fees to be awarded in a common fund settlement, Class Counsel are requesting one third or 33.33% of the Net Settlement Fund, which is computed by subtracting the costs of notice and administration (approximately $105,000) as well as Plaintiffs' requested service awards of $2,000.00 each (totaling $6,000.00).

This fee request is reasonable, in line with market rates, and should therefore be approved. *See, e.g.*, *Birchmeier v. Caribbean Cruise Line, Inc.*, 896 F.3d 792, 795 (7th Cir. 2018) (affirming post-*Pearson* fee award in TCPA class action that included "the sum of 36% of the first $10 million"); *Taubenfeld v. Aon Corp.*, 415 F.3d 597, 600 (7th Cir. 2005) (noting table of thirteen cases in the Northern District of Illinois submitted by class counsel showing fees awarded ranged from 30% to 39% of the settlement fund); *In re Forefront Data Breach Litig.*, 2023 WL 6215366, at *9 (E.D. Wis. Mar. 22, 2023) (holding that "having considered the risk of nonpayment and the other relevant factors, I conclude that a fee amounting to one-third of the gross settlement is reasonable.").

### 3. Class Counsel's Requested Fee Award is Commensurate with the Fees Awarded in Similar Tracking Settlements.

Attorney's fee awards in analogous class action settlements shed light on the market rate for legal services in similar cases. *Taubenfeld*, 415 F.3d at 600. Here, the requested fee was the product of arm's-length negotiations between the Parties conducted only after agreement on the

material terms of the Settlement. *See* Fee Decl. ¶¶ 9, 48. In reaching that agreement, the Parties evaluated the range of fee awards approved in comparable tracking-technology cases. *Id.* ¶ 25; *see also In re TikTok, Inc., Consumer Priv. Litig.*, 617 F. Supp. 3d 904, 941 (N.D. Ill. 2022) (holding in data tracking case that "a one-third fee aligns with the one-third contingency fee routinely charged by class action lawyers across the country.").

Because the requested fee here is calculated as a percentage of the Net Settlement Fund, it is consistent with—if not lower than—fee awards routinely approved in pixel-tracking settlements nationwide. *See, e.g.*, *Braun v. Philadelphia Inquirer, LLC*, 2025 WL 1314089, at *12 (E.D. Pa. May 6, 2025) (finally approving $374,962.25 in fees reflecting one-third of $1,125,000 settlement fund in VPPA case) (collecting cases); *see also In re Novant Health, Inc.*, 2024 WL 3028443, at *11 (M.D.N.C. June 17, 2024) (noting request for "fees equal to one-third of the settlement" is "comparable to awards in other data tracking pixel cases" and listing pixel cases from Michigan and Wisconsin); *In re Grp. Health Plan Litig.*, No. 23-cv-00267-JWB-DJF (D. Minn. July 9, 2025) (finally approving $2 million in fees reflecting one-third of $6 million settlement fund in pixel case); *Kane v. Univ. of Rochester*, No. 23-cv-06027-MJP (W.D.N.Y. Aug. 21, 2025) (finally approving $950,000 in fees reflecting one-third of $2.85 million settlement fund in pixel case); *B.K. v. Eisenhower Med. Ctr.*, No. 23-cv-02092-JGB-DTB (C.D. Cal. Oct. 22, 2025) (finally approving $288,750 in fees reflecting one-third of $875,000 settlement fund in pixel case).

In sum, the requested fee award falls squarely within the range routinely approved as reasonable in comparable class action settlements and therefore should be approved here.

### 4. **The Risks Involved in this Action Justify the Requested Fee Award.**

Because Class Counsel litigated this Action—against extremely capable and experienced defense counsel—on a purely contingent basis in an uncertain and rapidly developing area of

10

tracking-technology law, the risk of nonpayment was significant, which further justifies awarding the fees sought here. "Contingent fees compensate lawyers for the risk of nonpayment. The greater the risk of walking away empty-handed, the higher the award must be to attract competent and energetic counsel." *Silverman v. Motorola Sols., Inc.*, 739 F.3d 956, 958 (7th Cir. 2013) (citing *Kirchoff v. Flynn*, 786 F.2d at 320 (7th Cir. 1986)). The risk of non-payment is a key consideration in assessing the reasonableness of a requested fee and must be incorporated into any ultimate fee award. *See, e.g.*, *Sutton v. Bernard*, 504 F.3d 688, 694 (7th Cir. 2007) (finding abuse of discretion where lower court, in applying percentage-of-the-fund approach, refused to account for the risk of loss).

Class Counsel bore significant risk in prosecuting this Action, including the commitment of substantial time and the advancement of all costs and expenses necessary to pursue relief on behalf of Plaintiffs and the Class. *See* Fee Decl. ¶ 28. At least one district court within this circuit has recognized that "[d]ata privacy law is a relatively undeveloped and technically complex body of law, which creates uncertainty and, therefore, additional risk for Class Counsel." *In re TikTok, Inc., Consumer Priv. Litig.*, 617 F. Supp. 3d at 941. This case presented those same challenges.

Defendants, represented by extremely capable defense counsel, repeatedly denied all allegations of wrongdoing and—if the case did not settle—would have vigorously defended against Plaintiffs' individual and representative claims. Fee Decl. ¶ 35. This Action involves complicated and technical facts, highly skilled opposing counsel, and challenging issues for liability, class certification, and damages, to name a few. *Id.* ¶ 45. Were litigation to proceed, there would be numerous expert reports and costly depositions, which would present significant risks, expenses, and delay. There are numerous hurdles that Plaintiffs would have had to overcome

before the Court might find a trial appropriate, and even a victory at trial does not spell ultimate success.

Given the uncertainty surrounding data privacy law and the VPPA specifically where causation and damages may be difficult to prove, unknown variables in relation to the size and nature of the class pre-suit, whether this Court would ultimately certify Plaintiffs' proposed class, costs of experts, and whether Plaintiffs would ultimately be successful on the merits of their claims, the risk Class Counsel assumed was significant. Despite these risks, Class Counsel took on this litigation on a purely contingent basis, and courts have long recognized that counsel should be encouraged to take on risky cases by providing appropriate recovery. Thus, this factor supports the requested fee award.

### 5. Class Counsel's Requested Fee is Well Within the Range of Typical Contingency Fee Arrangements in this Circuit.

Class Counsel's request for one-third of the Net Settlement Fund is reasonable and consistent with both prevailing market rates and with Seventh Circuit precedent. In evaluating the requested fee, courts may consider the "actual fee contracts that were negotiated for private litigation[.]" *Taubenfeld*, 415 F.3d at 599 (citing *Synthroid I*, 264 F.3d at 719). Within this Circuit, the customary contingency agreement is 33% to 40% of the total recovery. *See, e.g.*, *In re Tiktok, Inc., Cons. Priv. Litig.*, 617 F. Supp. 3d at 941 ("[A] one-third fee aligns with the one-third contingency fee routinely charged by class action lawyers across the country."); *Kirchoff*, 786 F.2d at 323 (finding 40% to be "the customary fee in tort litigation"); *Benoskie v. Kerry Foods, Inc.*, 2020 WL 5769488, at *3 (E.D. Wis. Sept. 28, 2020) (noting customary contingent fee is "between 33 and 40 percent") (cleaned up).

Here, the contingency agreement between Plaintiffs and Class Counsel is consistent with customary contingency agreements. The fees contemplated under Class Counsel's representation

12

agreements for cases in this district and elsewhere generally fall within the 33% to 40% range. Fee Decl. ¶¶ 27, 29. Class Counsel's fee request of one third of the Net Settlement Fund is at the low end of the range regularly allowed by courts in this district. Accordingly, this factor supports a finding that the requested fee reflects the amount Class Counsel would have received had they negotiated their fee ex ante and should therefore be awarded.

### 6. <u>The Quality of Class Counsel's Work and Effort Invested Support the Requested Fee.</u>

Class Counsel litigated this Action with substantial diligence and efficiency, and the quality of their performance and the work invested strongly support the requested fee award. From the outset, Class Counsel conducted a thorough pre-suit investigation, prepared the complaint, retained and consulted with experts, engaged in substantial formal discovery, completed informal discovery in preparation of mediation, and participated in adversarial negotiations that ultimately produced a Settlement for the benefit of the Settlement Class. *See Sutton*, 504 F.3d at 693 (evaluating quality of counsel's performance). Class Counsel also devoted significant time to negotiating and finalizing the Settlement and preparing the approval papers, and—following preliminary approval—worked closely with the Settlement Administrator to implement notice and oversee the claims process. Fee Decl. ¶¶ 15-17.

Courts likewise consider counsel's experience, reputation, and ability in evaluating the reasonableness of a fee request. Here, Class Counsel leveraged substantial nationwide experience in data privacy, tracking technology, and consumer class actions to negotiate a non-reversionary common-fund settlement with skilled defense counsel. Fee Decl. ¶¶ 13-14. Both Almeida Law Group LLC and Hansen Reynolds LLC are nationally recognized firms with significant experience litigating consumer and data privacy class actions, including cases involving the VPPA at issue

13

here. *See* Declaration of David S. Almeida in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement, Dkt. No. 59, Exs. B & C (resumes of counsel).

In light of the substantial recovery obtained for the Class, the adversarial and complex nature of the Action, and the significant time, skill, and experience devoted to achieving this result, the quality of Class Counsel's work further supports approval of the requested fee award.

## B.      The Court Should Also Award Reasonable Reimbursement for Expenses.

It is well established that counsel who create a common benefit like this one are entitled to the reimbursement of litigation costs and expenses. *See, e.g.*, *In re Lawnmower Engine Horsepower Mktg. & Sales Pracs. Litig.*, 733 F. Supp. 2d 997, 1013 (E.D. Wis. 2010) (finding that "class counsel's costs were reasonably incurred in the course of this litigation and that a paying client would reimburse counsel for such costs, and therefore I approve their deduction from the common fund."); *Jewell v. HSN, Inc.*, 2020 WL 4904427, at *3 (W.D. Wis. Aug. 19, 2020) (similar). The Seventh Circuit has held that costs and expenses should be awarded based on the types of "expenses private clients in large class actions (auctions and otherwise) pay." *Synthroid I*, 264 F.3d at 722**Error! Bookmark not defined.**.

Here, Class Counsel have incurred $10,070.55 in costs and expenses. Fee Decl. ¶¶ 36-38. These expenses were necessary to prosecute this Action and modest in comparison to both similarly sized lawsuits and the enormous costs that likely would have been incurred if litigation had continued. *Id*. Accordingly, Class Counsel request that the Court approve as reasonable expenses in the amount of $10,070.55.

## C.      The Service Award to the Class Representative Should Be Approved.

Class Counsel also request that the Court approve Service Awards of $2,000 for each Class Representative in recognition of their efforts on behalf of the Class. Courts routinely grant such

14

awards to compensate class representatives for the time and responsibilities associated with prosecuting representative actions and to encourage individuals to undertake that role. *See, e.g.*, *Niedert*, 142 F.3d at 1016 (recognizing that "because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit"); *Synthroid I*, 264 F.3d at 722 ("Incentive awards are justified when necessary to induce individuals to become named representatives."). Absent Plaintiffs' willingness to serve as Class Representatives, the Class would have recovered nothing. *See Chambers v. Together Credit Union*, 2021 WL 1948452, at *3 (S.D. Ill. May 14, 2021) (finding requested service award reasonable where class representative was involved in litigation).

The Class Representatives devoted meaningful time and effort to advancing the interests of the Class. In addition to lending their names to this matter, and thus subjecting themselves to public attention, Plaintiffs were actively engaged in this Action. Plaintiffs (i) maintained regular contact with Class Counsel; (ii) participated in client interviews; (iii) provided relevant documents, including through participation in formal discovery; (iv) assisted in the investigation of the Action; (v) remained available for consultation throughout settlement negotiations; (vi) reviewed pertinent pleadings and the Settlement Agreement, and (vii) answered counsel's many questions. *See* Fee Decl. ¶ 23. Their commitment is particularly notable given their relatively modest individual financial stakes.

Moreover, the total amount requested, $2,000 each for three Plaintiffs, are also well within the range commonly approved in the Seventh Circuit. *See, e.g.*, *Daluge v. Cont'l Cas. Co.*, 2018 WL 6040091, at *3 (W.D. Wis. Oct. 25, 2018) ("As for the appropriate amount, district courts in this circuit have awarded incentive fee awards ranging from $5,000 to $25,000.") (collecting cases); *Hobon v. Pizza Hut of S. Wisconsin, Inc.*, 2019 WL 13217369, at *2 (W.D. Wis. Dec. 13,

2019) ("John Hobon's payment of $10,000 is fair and reasonable given his efforts in initiating litigation and securing a recovery on behalf of himself and the class, and the risks he assumed in his role as class representative."); *In re TikTok, Inc., Consumer Priv. Litig.*, 617 F. Supp. 3d at 949 (approving $2,500 service awards for approximately 35 plaintiffs). Thus, the requested service awards should be approved.

<u>**CONCLUSION**</u>

Settlement Class Counsel, with the help of Plaintiffs, achieved a settlement that provides a significant benefit for the Class. Every aspect of this case and the resulting settlement was pursued with diligence and vigor, and the time and resources invested have produced meaningful results. In recognition of these efforts, Class Counsel seek Attorneys' Fees and Expenses as well as Service Awards within the range routinely approved by courts in the Seventh Circuit. Because the requested fees are fair and reasonable, Plaintiffs respectfully request their approval.

Dated: February 13, 2026

Respectfully submitted,

*/s/ David S. Almeida*
David S. Almeida (WI Bar # 1086050)
Britany A. Kabakov
**ALMEIDA LAW GROUP LLC**
849 W. Webster Avenue
Chicago, Illinois 60614
(708) 529-5418
david@almeidalawgroup.com
britany@almeidalawgroup.com

Timothy M. Hansen (SBN 1044430)
Michael C. Lueder (SBN 1039954)
**HANSEN REYNOLDS LLC**
301 N. Broadway, Suite 400
Milwaukee, Wisconsin 53202
(414) 455-7676
Fax: (414) 273-8476
thansen@hansenreynolds.com
mlueder@hansenreynolds.com

16

*Attorneys for Plaintiffs & the Settlement Class*

## CERTIFICATE OF SERVICE

I hereby certify that on February 13, 2026, a true and correct copy of the foregoing was electronically filed with the Clerk of Court using CM/ECF. Copies of the foregoing document will be served upon interested counsel via transmission of Notices of Electronic Filing generated by CM/ECF.

*/s/ David S. Almeida*